

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DANTONIO M. SWANSON,                    §
                                        §
          Petitioner,                   §
                                        §
v.                                      §        No. 4:11-CV-024-A
                                        §
RICK THALER, Director,                  §
Texas Department of Criminal            §
Justice, Correctional                   §
Institutions Division,                  §
                                        §
          Respondent.                   §

MEMORANDUM OPINION
and
ORDER

This is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 filed by petitioner, Dantonio M. Swanson, a state

prisoner incarcerated in Pampa, Texas, against Rick Thaler,

Director of the Texas Department of Criminal Justice,

Correctional Institutions Division, respondent.  After having

considered the pleadings, state court records, and relief sought

by petitioner, the court has concluded that the petition should

be denied.

I.  Factual and Procedural History

On September 15, 2006, a jury in the Criminal District Court

Number Four of Tarrant County, Texas, found petitioner guilty of

murdering Ryan Latigo by shooting him with a firearm and assessed

his punishment at ten years' confinement.   (State Habeas R. at 70-71)[1]   Petitioner appealed, but the Court of Appeals for the Second District of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.   *Swanson v. State*, No. 2-07-045-CR, slip op., 2008 WL 344550 (Tex. App.–Fort Worth Feb. 7, 2008) (not designated for publication); *Swanson v. State*, PDR No. 252-08, 2008 WL 38565506 (Tex. Crim. App. Aug. 20, 2008) (not designated for publication).   Petitioner also filed a state application for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. (State Habeas R. at cover)   This federal petition followed.

In affirming the trial court's judgment, the appellate court summarized the evidence as follows:

> The evidence at trial showed that appellant and the victim, Ryan Latigo, had a contentious relationship that had existed for months before the shooting.   In October 2003, Latigo moved into a duplex with Kamiean Kimble, appellant's ex-girlfriend, and appellant's young daughter, Karrigan.   Appellant, upset by these living arrangements, often exchanged profanities and threats with Latigo when he went to Kimble's duplex to

---

[1]"State Habeas R." refers to the state court record in petitioner's habeas application no. WR-74,503-02.

pick up Karrigan.  Appellant also argued with Kimble about Latigo's presence in the home and once told her that "the only reason that [Latigo] was still living was because [appellant] allowed him to."

On August 12, 2004, appellant arrived early to pick up Karrigan and began to bicker with Kimble about child support.  The conversation escalated and eventually awoke Latigo, who had been asleep in the bedroom.  Latigo and appellant argued, and both Latigo and Kimble ordered appellant to leave.  Latigo stood in the doorway to watch as appellant, trailed by two-year-old Karrigan, left the duplex. Both men continued "trash talking" to each other while appellant walked to his car.

Reaching his car, appellant opened the trunk and pulled out a 12-gauge pump shotgun. Stepping toward Latigo, appellant told Karrigan, "Baby, move out of the way real quick." Appellant fired one shot into Latigo's chest, piercing all four chambers of his heart and two major arteries.  Latigo stumbled back into the duplex and collapsed on the kitchen floor. Appellant followed Latigo up to the house to see if the shot had hit him, then took Karrigan and fled.  Kimble dialed 911 to report the shooting.

After leaving the scene, appellant called his father and told him about the shooting, stating, "I had to shoot him.  He kept coming at me."  Appellant then drove home to wait for the police.  When an officer arrived, appellant walked out to the patrol car and admitted, "I'm him, I did it."  Appellant did not mention that he believed Latigo had a weapon or that he shot Latigo in self-defense.

At trial, appellant testified and raised the issue of self-defense for the first time.  Appellant said that Latigo outweighed him by 60 to 65 pounds and was always the instigator when the men argued.  Latigo wore colors of a local Blood gang, and he and other members of the gang once tried to provoke appellant into a fight.  Appellant said that he never retaliated against

3

or threatened Latigo.

     Appellant also said that on a previous occasion, Latigo had physically attacked him. Appellant claimed that Latigo grabbed him by the throat, pushed him against his car, and threatened to "take [his] punk ass out now." Latigo told appellant that he was not afraid to "do time" because he had been in prison before. Appellant believed that Latigo was going to kill him and remained afraid every time he went to pick up his child. Appellant did not call the police after this incident because he feared that Latigo or members of the Blood gang might retaliate. Appellant testified that he instead bought a shotgun for protection, which he carried, loaded, in the trunk of his car.

*Swanson*, 2008 WL 344550, at *1-2.

## II. Issues

Petitioner raises two grounds, in which he claims (1) the trial court violated his Sixth Amendment right to confront and cross-examine witnesses and (2) he received ineffective assistance of trial counsel. (Pet. at 7)

## III. Rule 5 Statement

Respondent believes petitioner has failed to exhaust his state court remedies as to his ineffective-assistance claims. 28 U.S.C. § 2254(b)(1). (Resp't Ans. at 5-9) Under the federal exhaustion requirement, a habeas petitioner must have fairly presented the substance of his federal claim to the highest court of the state. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher v. Texas*, 169 F.3d

295, 302 (5th Cir. 1999); *Carter v. Estelle*, 677 F.2d 427, 443

(5th Cir. 1982).  In order for a claim to be exhausted, the state

court system must have been presented with the same facts and

legal theory upon which the petitioner bases his current

assertions.  *See Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir.

2006).  It is not enough that a somewhat similar state-law claim

was made.  *Id.*  An argument based on a legal theory distinct from

that relied upon in the state court does not meet the exhaustion

requirement.  *Id.*  Exhaustion requires a state prisoner to

present the state courts with the same claim he urges upon the

federal courts.  *Id.*

   In his state habeas application, petitioner claimed his

trial counsel was ineffective and provided the following

supporting facts:

> Defense counsel was ineffective for not objecting
> to the reading of the Indictment, charging defendant as
> shooting the victim with a "Deadly Weapon," to-wit:  a
> firearm.  A shotgun is not per-se a deadly weapon
> unless it is proved that the victim actually died from
> a wound inflicted by the firearm.  The defense lawyer
> allowed the medical examiner to state that the shotgun
> used in the crime was a deadly weapon.  This should
> have been objected to.  The medical examiner is not a
> gun specialist, his statement was no more than mere
> speculation.  He is no gun expert.  The medical
> examiner testified that the victim['s] toxicology
> report proved the victim had two drugs of abuse present
> in his body, marijuana and cocaine.  The victim's death
> may have been induced by drug use.  Defense attorney

failed to object to the indictment, failed to object to the prosecutor's argument that [the] victim died from the shotgun wound even though drug abuse was found during the toxicology tests, and the indictment predicates felony murder on the underlying offense of aggravated assault.

(State Habeas R. at 8) (record references omitted)

In this federal petition, petitioner claims trial counsel was ineffective by failing to present "arguments and authorities on Texas Rules of Evidence regarding confrontation and cross-examination rights for impeachment and defense" and provides the following supporting facts:

Trial attorney failed to be prepared and failed to present any of the controlling authorities to the court which would have alerted the judge and jury that the judge was abusing his discretion and violating the Sixth Amendment rights of petitioners [sic]. Petitioner was prejudiced by such attorney deficiencys [sic] because jurors were denied hearing such proffered impeachment testimonies to compare and consider for petitioner[']s only defense.

(Pet. at 7)

Having also reviewed petitioner's memorandum in support of both habeas actions and the state habeas court's findings and conclusions,[2] it is clear petitioner's ineffective-assistance

---

[2]Petitioner argues that the state habeas court entered findings of fact relevant to his ineffective-assistance claims now raised for the first time in this petition, thus "opening the door" under the "argument invitation rule." He directs the court to the state court's findings of fact 4, 5, and 23 through 28.

claims under ground two are unexhausted.  (State Habeas R. at 19-
20)  Under the Texas abuse-of-the-writ doctrine, however,
petitioner cannot now return to state court for purposes of
exhausting the claims.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4
(Vernon Supp. 2010).  The abuse-of-the-writ doctrine represents
an adequate state procedural bar to federal habeas review.  *See*
*Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).  Therefore,
absent a showing of cause and prejudice or a miscarriage of
justice, such showing not having been demonstrated, petitioner's
ineffective-assistance claims under ground two are procedurally
barred from this court's review. *See Smith v. Johnson*, 216 F.3d
521, 523- 24 (5th Cir. 2000).  Accordingly, the discussion below
applies only to petitioner's claims under ground one.

---

(Pet'r Reply at 2)  Having opened the door, petitioner asserts he
raised the claims for exhaustion purposes in his "rebuttal and
traverse pleadings" in the state habeas proceedings, a copy of
which he attaches to his reply as Appendix A.  (Pet'r Reply 1-3 &
App. A)  The habeas court's findings of fact 4 and 5, however,
are relevant to petitioner's claims against the trial court and
findings of fact 23 through 28 are relevant to petitioner's
claims against appellate counsel.  (State Habeas R. 59, 62)
Further, under state law, issues raised for the first time in a
reply brief are not considered.  *See* TEX. R. APP. PROC. 38.2;
*Donaldson v. Tex. Dept. of Criminal Justice-Correctional*
*Institutions Div.*, — S.W.3d —, 2011 WL 2638171 (Tex. App.-Tyler
June 30, 2011); *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex.-
App.-Houston [14[th] Dist.] 2009).  Finally, the document does not
bear a filestamp indicating it was actually filed in state court
nor is a copy found in the state court records.

## IV.  Discussion

### A.  *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

8

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

B.   *Abuse of Discretion by the Trial Court*

Petitioner claims the trial court abused its discretion by excluding the testimony of witnesses to attack Kimble's credibility and support his self-defense theory, in violation of his rights to due process and a fair trial. (Pet. at 7; Pet'r Brief in Support at 3-5)

First, petitioner complains the trial court refused to allow testimony, for impeachment purposes, from state's witness Clara Slaughter regarding the fact that Kimble allowed the victim, a convicted felon, to live with her in HUD housing against the

9

rules and terms of the lease.   (Pet'r Br. in Support at 3-5; RR,

vol. 3, at 57-62)   Second, petitioner complains the trial court

refused to allow, on relevancy grounds, testimony of police

officers Michael Hynes, J.D. Donaldson, Robert Abbott, and Brad

Hickey regarding the fact that the victim was a known gang member

with a propensity for violence, establishing that petitioner had

a genuine reason to fear for his life and the safety of his

daughter.   (RR, vol. 3, at 57-62; RR, vol. 4, at 204-210)

The state habeas court entered the following findings of

fact relevant to these claims:

> 4.   Applicant's counsel wanted Ms. Slaughter to
>       testify that K. Kimble lived in HUD housing and
>       that it was a violation of the rules that a
>       convicted felon live with her.
>
> 5.   The trial court denied Ms. Slaughter's testimony
>       on the basis that there was no evidence that K.
>       Kimble lied to housing authorities.
>
>       .  .  .
>
> 8.   Applicant's counsel wanted to call Officer Michael
>       Hynes to testify that the victim had been accused,
>       but not convicted, of yelling obscenities and
>       throwing a bottle at someone's truck in 1996.
>
> 9.   The trial court found that Officer Michael Hynes'
>       testimony was not relevant because Applicant could
>       not show that he was aware of the prior act of
>       throwing a bottle at a truck eight years before
>       Applicant's offense or that it had any effect on
>       the offense.

10. Applicant's counsel indicated to the Court that he would not call additional officers to testify because they would present similar testimony as Officer Hynes.

11. Applicant does not allege to what J.D. Donaldson, Robert Abbott, Brady Hickey, or W.E. Steele would have testified or why their testimony was admissible.

(State Habeas R. at 59-60) (record references omitted)

The state court also entered the following conclusions of law:

3. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." Tex. R. Evid. 608(b).

4. "A witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness." *Hammer v. State*, — S.W.3d —, 2009 WL 928561, at *5 (Tex. Crim. App. 2009).

5. Applicant has failed to prove that Ms. Slaughter's testimony regarding K. Kimble violating her lease by allowing the victim to live there was admissible.

6. Applicant has failed to prove that the trial court erred by denying admission of Ms. Slaughter's testimony.

7. "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It

11

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." Tex. R. Evid. 404(b).

8.  Applicant has failed to prove that the testimony that the victim had been accused, but not convicted, of throwing a bottle at a truck eight years before the murder was admissible.

9.  Applicant has failed to prove that the trial court erred by denying admission of Officer Hynes' testimony.

10. Applicant has failed to prove that the testimony of J.D. Donaldson, Robert Abbott, Brad Hickey, or W.E. Steele was admissible.

11. Applicant has failed to prove that the trial court denied the admission of the testimony J.D. Donaldson, Robert Abbott, Brad Hickey, or W.E. Steele.

(State Habeas R. at 62-63)

Petitioner has failed to demonstrate the state courts' denial of the claims was contrary to or involved an unreasonable application of federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). As noted by the state habeas court, under Rule 608(b) of the Texas Rules of Evidence, specific instances of conduct may not be

proved by extrinsic evidence.  TEX. R. EVID. 608(b).  Thus, the
trial court properly excluded the proffered testimony of
Slaughter as a matter of state law, and petitioner cites no
authority holding that Rule 608(b) implicates a federal
constitutional issue.  Even if the testimony was admissible,
petitioner has not shown that the exclusion rendered his trial
fundamentally unfair or that Kimble's credibility would have been
so damaged that the jury would have acquitted him.  Furthermore,
a due process violation arises only when the excluded evidence
"is a crucial, critical, highly significant factor in the context
of the entire trial."  *Johnson v. Puckett,* 176 F.3d 809, 821 (5th
Cir. 1999).  Exclusion of the proffered, or similar, testimony of
Officer Hynes cannot be said to be crucial, critical, or highly
significant in the context of petitioner's murder trial.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate
Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases
in the United States District Court, and 28 U.S.C. § 2253(c), for
the reasons discussed herein, the court further ORDERS that a

certificate of appealability be, and is hereby, denied, as

petitioner has not made a substantial showing of the denial of a

constitutional right.

    SIGNED September ____9____, 2011.


_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE